James F. JENKINS, Plaintiff-Appellant,

v.

LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION PLAN, Defendant-Appellee.

No. 82–2785.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1983.

Decided July 8, 1983.

Michael M. Mulder, Meites & Frackman, Chicago, Ill., for plaintiff-appellant.

Sherman Carmell, Carmell, Charone & Widmer, Ltd., Chicago, Ill., for defendant-appellee.

Before BAUER and COFFEY, Circuit Judges, and HOLDER, District Judge.*

HOLDER, District Judge.

Appellant, James F. Jenkins, appeals from the district court's October 28, 1982 (docketed November 1, 1982) order granting the motion of appellee, Local 705 International Brotherhood of Teamsters Pension Plan, for judgment on the pleadings. We reverse.

### Procedural Background

The appellant commenced his action in the district court on June 4, 1982 with the filing of his three count complaint. The appellant brought his action pursuant to the Employee Retirement Income Security Act of 1974 (hereafter 'ERISA'), 29 U.S.C. § 1001, *et seq.*, to obtain benefits and to enforce and clarify his rights under an employee pension benefit plan (hereafter 'Plan'). Count I of his complaint sought full retirement benefits based on normal retirement date and age of sixty-five (65). Count II reincorporated the allegations of Count I, and sought early retirement benefits based on appellant's age of fifty-seven

in 1969. Count III reincorporated the allegations of Count I, and sought deferred vested retirement benefits under the Plan.

The appellant filed its answer to the complaint on June 30, 1982 in admissions and denials, along with certain affirmative defenses.

On September 3, 1982 the appellee filed its motion for judgment on the pleadings, based on the affirmative defenses of statutes of limitations barring each of the claims in Counts I, II and III of the complaint, and based on the affirmative defenses of failure to exhaust internal remedies of the Plan. In support of its motion, the appellee submitted a memorandum of law. The appellee argued that appellant's claims alleged in Counts I, II and III of the complaint were untimely filed and were barred by the ninety (90) day period set forth in Ill.Rev.Stat. ch. 10, § 112 for vacating an arbitration award and/or the six (6) month period provided in Section 10(b) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(b). The appellee also argued that the claims in Counts II and III were improperly before the trial court because they had not been presented to the Trustees as provided for in the Plan.

The appellant's response to the motion for judgment on the pleadings asserted that the applicable statute of limitations was the Illinois ten (10) year statute of limitations for actions on a written contract, Ill.Rev. Stat. ch. 110, § 13–206. The appellant's response also argued that he had exhausted the internal administrative remedies provided in the Plan and/or the exhaustion should be excused as further efforts would have been futile.

On October 28, 1982, the district court granted the motion for judgment on such affirmative defenses in the pleadings "for the reasons set forth in defendant's memorandum."

---

* The Honorable Cale J. Holder, District Judge of the United States District Court for the Southern District of Indiana, is sitting by designation.

The appellant timely filed his notice of appeal on November 3, 1982.[1]

### Issues on Appeal

The issues presented on appeal by the parties may be characterized as follows: (1) did the district court err in concluding that the appellant's three count complaint was time-barred and if so, what statute of limitations governs each of the counts brought under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the employee pension benefit plan? and (2) did the appellant exhaust the internal remedies of the Plan, was such exhaustion required and is the exhaustion issue properly before this court?

### Facts

The appellant, James F. Jenkins, was born on September 12, 1912. During some or a part of the years from 1954 through 1977, James F. Jenkins was employed by employers who had a collective bargaining agreement with Local 705 of the International Brotherhood of Teamsters. Local 705 International Brotherhood of Teamsters Pension Plan and Local 710 Pension Fund were parties to the Joint Council No. 25 Reciprocal Agreement and as such were engaged in covered or related employment providing for an employee pension benefit plan.

Local 705 International Brotherhood of Teamsters Pension Plan, as amended February 1, 1976, and its predecessors, contain the terms and conditions for entitlement to retirement, disability and death benefits for members of Local 705. The Plan and its predecessors were established through collective bargaining agreements between various union locals, including Local 705, and employers who agreed to provide contributions to the Pension Plan Fund on behalf of covered employees and to be bound by the Plan and Trust Agreement. The 1976 amended version of the Plan, and its predecessors, contemplate that employees for whom contributions to the Plan have been made by an employer, in a bargaining unit represented by the Union, will be a participant in the Plan and eligible for benefits under the Plan. If these conditions are met, employee coverage is automatic.

James F. Jenkins attained the age of sixty-five (65) on October 1, 1977. In June of 1978, Jenkins, proceeding without counsel, requested benefits under the Plan. Jenkins' request was denied. On October 5, 1978, in an open meeting the Board of Trustees of Local 705 International Brotherhood of Teamsters Pension Plan (hereafter 'Board'), considered appellant's claim for a normal or disability pension and/or an appeal for benefits. The Board denied Jenkins' request on October 5, 1978, and in a letter dated November 8, 1978 confirmed the earlier denial of his requests for benefits. On or about October 16, 1978, Jenkins sought the assistance of the Legal Assistance Foundation of Chicago. The attorney assigned to Jenkins' case sought employment information and records from both Local 705 International Brotherhood of Teamsters Pension Plan and the Social Security Administration of the Department of Health, Education and Welfare. The last of the requested employment information was received by Jenkins' attorney in August of 1980. In October of 1980, the Legal Assistance Foundation of Chicago determined that appellant's claim was potentially fee generating and thus referred it to a private attorney. Appellant's new attorney requested additional employment information from the Internal Revenue Service in January of 1981. The appellant completed the compilation of information from the Internal Revenue Service in December of 1981.

Based on the additional information and supplemented employment records, Jenkins requested the Board on March 22, 1982 to reconsider his claim for a pension, along with his newly made requests for an early

---

**1.** Appellant, James F. Jenkins, died on December 30, 1982. Counsel for the appellant has not moved to substitute the legal representative of Mr. Jenkins' estate. Further, it would appear and no one has raised the issue to the contrary, that the death of Mr. Jenkins has not rendered this action moot.

retirement pension and/or a deferred vested pension under the Plan. Local 705 International Brotherhood of Teamsters Pension Plan denied the appellant's requests for reconsideration and review on May 12, 1982. The appellant filed his complaint on June 4, 1982.

## Opinion

The appellant has brought his action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* Specifically, Sections 502(a)(1)(B) and (e), 29 U.S.C. § 1132(a)(1)(B) provide in part as follows:

(a) A civil action may be brought—
   (1) by a participant or beneficiary—
     (A) . . . .
     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, to clarify his rights to future benefits under the terms of the plan;

(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

At the time of its enactment and in an attempt to resolve discrepancies between the House and Senate versions a joint explanatory statement was issued and made a part of the legislative history of ERISA. It provides, in part:

Under the conference agreement, civil actions may be brought by a participant or beneficiary to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, and for relief from breach of fiduciary responsibility. . . . However, with respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion as to those brought under section 301 of the Labor-Management Relations Act of 1947.*

H.R.Conf.Rep. No. 93–1280, Joint Explanatory-Statement of the Committee of Conference, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Admin.News, pp. 4639, 5038, 5107 (emphasis supplied). Accordingly, the legislative history and subsequent case law have made it clear that federal jurisdiction exists over and federal law will control actions brought under Sections 502(a)(1)(B) and (e) of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (e). *Reiherzer v. Shannon,* 581 F.2d 1266, 1271 (7th Cir.1978).

Section 301 of the Labor Management Relations Act (hereafter 'LMRA'), 29 U.S.C. § 185 does not contain any statute of limitations dealing with suits by and against labor organizations. Consequently, the timeliness of Section 301 actions is to be determined "as a matter of federal law, by reference to the appropriate state statute of limitations". *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1981); *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966); *Davidson v. Roadway Express, Inc.,* 650 F.2d 902, 903 (7th Cir.), *cert. denied,* 455 U.S. 947, 102 S.Ct. 1447, 71 L.Ed.2d 661 (1981). The court, in making this determination, must decide which statute of limitations period is "the most appropriate one provided by state law." *United Parcel Service, Inc. v. Mitchell, supra,* at 1563; *John-*

*son v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295.

■ ERISA, like Section 301 of the LMRA, does not contain a statute of limitations for the bringing of civil actions. Therefore, guided by the principles announced in Section 301 cases on the statute of limitations issue, the court will look to the most appropriate state statute of limitations. *See: Johnson v. Railway Express, supra; Livolsi v. City of New Castle, Pa.,* 501 F.Supp. 1146, 1151 (W.D.Pa.1980). In determining the most appropriate state statute of limitations, the court must be cognizant of and examine the underlying nature of the federal claim as well as the federal policies involved.

The employee benefit pension plan in this case is administered in the State of Illinois by an equal number of union and employee trustees. The Administrator of the Plan, who is also designated as the agent for service of process, has his office in the State of Illinois. The headquarters of the Plan and its principal place of business are located in Chicago, Illinois. The investment agents of the Plan are located in the State of Illinois as is Local Union No. 705 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Accordingly, the court will look to the State of Illinois in determining the most appropriate state statute of limitations.[2]

The parties have referred the court to various Illinois statutes of limitation. The appellee argued in the trial court that the ninety (90) day Illinois statute for vacating an arbitration award, Ill.Rev.Stat. ch. 10, § 112[3] and/or the six (6) month period provided in Section 10(b) of the National Labor Relations Act, as amended, 29 U.S.C. 160(b)[4] should be applied to the facts of this case. Alternatively, the appellant has argued that the Illinois statutes of limitations for contract actions, Ill.Rev.Stat. ch. 110, § 13–205[5] and Ill.Rev.Stat. ch. 110, § 13–206[6] are more applicable.

■ It is clear that the characterization of a particular action for the purpose of selecting the most appropriate state statute of limitations is ultimately a question of federal law. *International Union, UAW v. Hoosier Cardinal Corp., supra,* 383 U.S. at

---

2. The record indicates that Illinois is the forum State and the State in which the operative events occurred. Further, neither party has suggested that the limitations provisions of another State, other than Illinois, would be applicable or relevant to the facts of this case.

3. Ill.Rev.Stat. ch. 10, § 112
   § 112. Vacating an award.
   . . . .
   (b) An application under this Section shall be made within 90 days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known.

4. Title 29, U.S.C., § 160(b).
   § 160. . . . .
   . . . .
   (b) . . .: Provided, that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-

month period shall be computed from the day of his discharge . . . . .

5. Ill.Rev.Stat. ch. 110, § 13–205.
   Five Year Limitation.—
   Except as provided in Section 2–725 of the "Uniform Commercial Code", approved July 31, 1961, as amended, and Section 11–13 of "The Illinois Public Aid Code", approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

6. Ill.Rev.Stat. ch. 110, § 13–206.
   Ten Year Limitation—
   Except as provided in Section 2–725 of the "Uniform Commercial Code", actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued; . . . .

706, 86 S.Ct. at 1113–1114. In order to determine the appropriate state statute of limitations, the court must first properly characterize the action.

■ The appellant, Jenkins, has brought this action to recover benefits allegedly due him under the terms of the employee pension benefit plan and to enforce and/or clarify his rights under the terms of that Plan. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The employee pension benefit plan and its predecessor, both of which were attached to the appellant's complaint, are in written form. Each of the Plans contain extensive and detailed terms and conditions governing the rights and duties of all participants in the fund. The employee pension benefit plans identify the participating union locals, union and employer trustees and the plan administrator. Although established through the collective bargaining process, the various collective bargaining agreements are not attached to the employee pension benefit plans. Further, the appellant in his action has not challenged the terms and conditions or the implementation of the various collective bargaining agreements.

The procedure outlined in the employee pension benefit plan, as amended February 1, 1976, calls for the submission of a benefit claim and/or application to the Plan Administrator for decision and action. Within sixty (60) days after the decision of the Administrator, an aggrieved person may appeal the Administrator's decision or action to the Plan's Trustees. The aggrieved person or his representative may appear before the Trustees to present their case. The Trustees shall make a full and complete review and shall issue their decision in writing within sixty (60) days after receipt of the written appeal request unless special circumstances require an extension of time, in which case the decision shall be rendered not later than one hundred twenty (120) days after receipt of the request. The decision of the Board of Trustees is final under the terms of the Plan.

The employee pension benefit plan does not contain an arbitration procedure. Further, the procedure outlined under the Plan for the submission of a benefit application is substantially different from an arbitration proceeding. In the traditional labor-management arbitration proceeding, the events which precipitate the arbitration process are often recent and do not span a great deal of time. The employee is frequently assisted in the presentation of his case before the arbitration panel by a union representative who is knowledgeable with the provisions of the collective bargaining agreement and, often, the events which have preceded the arbitration. Additionally, by the time the arbitration step has been reached, both sides, union and management, have had an opportunity to prepare and refine their arguments and complete preliminary research on any applicable facts and/or portions of the collective bargaining agreement which may be in issue.

In contrast to the above procedure for arbitration, a pension applicant will not usually be assisted by a representative of either his union or former employer when he requests pension benefits. He will, in all likelihood, be unfamiliar with the employee pension benefit plan, including its coverage and benefit rules. The pension applicant will not have access to his employment records, which may span decades, and involve different employers and union locals, along with interpretation and application of reciprocal employee pension benefit plan agreements.

The procedure outlined in the employee pension benefit plan for the submission of a benefit claim and the appeal of the denial of that claim are not analogous to a labor-management arbitration proceeding.

The complaint asserts claims under Section 503(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking pension benefits and a clarification of appellant's rights under the terms of the written employee pension benefit plan and does not challenge the terms of the collective bargaining agreements. The claims are creatures of contract law and not of labor law. Appellant's claimed eligibility for pension benefits is a matter of contract law. *See: Paris v. Prof-*

*it Sharing Plan For Employees Of Howard B. Wolf, Inc.,* 637 F.2d 357, 362 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).

Having characterized this action as a contract action, the court concludes that the ninety (90) day period for vacating an arbitration award[7] and the six (6) month provision[8] found in the National Labor Relations Act are inapplicable. The district court erred when it applied the ninety (90) day and/or six (6) month statutes of limitation to this action.

The employee pension benefit plan under which the appellant is seeking to recover is a written document. The individual employment contracts of the defendant's former employers and the actual employment periods themselves will need to be introduced for the appellant to properly explain his work history and qualify as a covered employee beneficiary under the terms of the Plan. Nevertheless, the action is based on the written contract pension plan. As such, the most analogous Illinois statute is Ill.Rev.Stat. ch. 110, § 13–206.

The court holds that the complaint is based on Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and appellant is seeking pension benefits and a clarification of his rights under the terms of the employee pension benefit plan based on the written terms of the Plan and the most analogous Illinois statute of limitations is the one for written contracts. *Allen v. McWilliams Electric Co., Inc.,* 494 F.Supp. 53, 55 (N.D. Ill., E.D.1980); *Brehm v. Sargent & Lundy,* 66 Ill.App.3d 472, 23 Ill.Dec. 419, 384 N.E.2d 55, 56 (Ill.App.1978). *Accord: Livolsi v. City of New Castle, Pa.,* 501 F.Supp. 1146, 1151 (W.D.Pa.1980); *Morgan v. Laborers Pension Trust Fund For Northern California,* 433 F.Supp. 518, 526 (N.D.Cal.1977).

The appellant received written notification that the Board of Trustees had denied his pension application on or about Novem-

---

**7.** The case of *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) on which appellee relies, involved a complaint for alleged wrongful discharge from employment brought under Section 301 of LMRA. In *Mitchell, supra,* a discharged employee brought suit against his union and former employer, alleging that the union had breached its duty of fair representation and the employer discharged him not for its stated reasons but to replace full-time employees with part-time employees. The facts of *Mitchell, supra,* showed that the union had filed a grievance on behalf of the employee and that such proceeded through the arbitration procedure. The United States Supreme Court characterized the action as more a creature of "labor law" than of general contract law and picked the ninety (90) State of New York statute to vacate an arbitration award as the most appropriate state statute.

*Davidson v. Roadway Express, Inc.,* 650 F.2d 902 (7th Cir.), *cert. denied,* 455 U.S. 947, 102 S.Ct. 1447, 71 L.Ed.2d 661 (1981) followed the *Mitchell, supra,* case. *Davidson, supra,* involved an employee suing his employer under Section 301 of LMRA for wrongful discharge and violation of the collective bargaining agreement. This court held that the most analogous state statute was the ninety (90) day statute to vacate an arbitration award.

*Bigbie v. Local 142, International Brotherhood of Teamsters,* 530 F.Supp. 402 (N.D.Ill., E.D.1981) an action in which union members sued their union for breach of duty of fair representation and denial of union membership rights under Section 301 of the LMRA. The court applied the ninety (90) day state statute of limitations to vacate an arbitration award as the most analogous.

The *Mitchell, supra, Davidson, supra,* and *Bigbie, supra,* cases may all be characterized as creatures of labor law rather than contract law. All three involved issues traditionally characterized as falling within the sphere of labor law, such as breach of duty of fair representation and violations of the terms of the collective bargaining agreement. As such, they are distinguishable from the case at bar.

**8.** The application of the six (6) month period found in Section 10(b) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(b), has been urged by Justice Stewart in Section 301 actions. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 1565–1571, 67 L.Ed.2d 732 (1981). Justice Stewart's position became the law on June 8, 1983. *Del Costello v. International Brotherhood of Teamsters, et al.,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476. Congress left for judicial determination the timeliness of the filing of ERISA actions including considering federal and State limitations of actions that closely resemble ERISA actions. See *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); and *Auto Workers v. Hoosier Corp.,* 383 U.S. 696, 703–704, 86 S.Ct. 1107, 1111–1113, 16 L.Ed.2d 192 (1966); *Del Costello v. International Brotherhood of Teamsters, id.*

254

ber 8, 1978. A cause of action under Section 502 of ERISA, 29 U.S.C. § 1132, arose when the trustees of the pension plan denied applicant's benefit application. *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7th Cir.1978). *Accord: Paris v. Profit Sharing Plan For Employees Of Howard B. Wolf, Inc.,* 637 F.2d 357, 361 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Morgan v. Laborers Pension Trust Fund For Northern California,* 433 F.Supp. 518 (N.D.Cal.1977).

Accordingly, appellant's claims for denial of pension benefits accrued on or about November 8, 1978. Appellant filed his civil complaint on June 4, 1982, within the ten year Illinois statute of limitations for actions on a written contract. The appellant's complaint was timely filed.

■ Further, the court holds that the appellant has exhausted the internal pension plan remedies on his requests for an early retirement pension or a deferred vested pension. On March 22, 1982, the appellant requested the Board of Trustees to reconsider its November 8, 1978 denial of his pension application, along with his requests for an early retirement pension and/or a deferred vested pension. The appellant's request for reconsideration and review was denied on May 12, 1982. The appellant has exhausted the internal remedies of the pension plan. Any other attempt by the appellant to proceed with these internal remedies would have been futile.

Accordingly, the judgment of the district court is vacated and the case is Remanded for further proceedings consistent with this decision.